UNITED STATES of America, Appellee,

v.

Omar GARCIA, a/k/a Sealed Deft. 3, a/k/a Jason, a/k/a Jaz on, Franklin Garcia, a/k/a Sealed Deft. 4, a/k/a International, Marcello Martinez, a/k/a Sealed Deft. 5, a/k/a Marc, Robert Mister, a/k/a Sealed Deft. 6, a/k/a Papa, a/k/a Bob, Rose Mister, a/k/a Sealed Deft. 7, Steven Mister, a/k/a Sealed Deft. 8, Richard Mister, a/k/a Sealed Deft. 9, a/k/a Richie, Robert Liguori, a/k/a Sealed Deft. 10, a/k/a Bob, Milton Howell, a/k/a Sealed Deft. 11, a/k/a Shotgun, Gregory Schnepf, a/k/a Sealed Deft. 12, a/k/a Greg, and Brian Martinez, Defendants,

Darberto GARCIA, a/k/a Sealed Deft. 1, a/k/a Mike, and Diogenes Rosario, a/k/a Sealed Deft. 2, a/k/a D, Defendants–Appellants.

Nos. 02–1032(L), 02–1187.

United States Court of Appeals, Second Circuit.

Jan. 30, 2003.

J. Scott Porter, Syracuse, N.Y., for Appellant Garcia.

Allen E. Stone, Vestal, N.Y., for Appellant Rosario.

Barbara D. Cottrell, Senior Litigation Counsel, (Glenn T. Suddaby, United States Attorney for the Northern District of New York, Miroslav Lovric, Assistant United States Attorney, on the brief), Albany, N.Y., for Appellee.

PRESENT: NEWMAN, KATZMANN, and RAGGI, Circuit Judges.

Summary Order

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 30th day of January, two thousand three.

UPON DUE CONSIDERATION of this appeal from judgments of the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge* ), it is hereby

ORDERED, ADJUDGED, AND DE-CREED that the judgments of the District Court are AFFIRMED.

Defendants-appellants Darberto Garcia and Diogenes Rosario appeal their convictions and sentences arising from their alleged roles in a narcotics trafficking ring which operated in the Masonville, New York area. The government contends that Garcia was a primary source of crack cocaine for the narcotics distribution conspiracy, and that he obtained the drugs from Rosario.

On January 11, 2001, Garcia pleaded guilty to one conspiracy count and twenty-two distribution counts. Garcia moved to withdraw his guilty plea on August 29, 2001, alleging ineffective assistance of counsel and a due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After receiving briefing from the parties, the District Court denied the motion on October 24, 2001. Garcia's motion to reconsider was denied on December 27, 2001, at which point he was sentenced to a 360 month term of imprisonment.

Rosario was charged with one count of conspiracy and one count of distribution of narcotics. The distribution count was dismissed before trial. On January 16, 2001, Rosario's jury trial commenced. Several witnesses testified to Rosario's role in the purchase, distribution, sale, and resupply of narcotics. Rosario was found guilty of conspiracy on January 24, 2001, and, on March 7, 2002, was sentenced to a 360 month term of imprisonment.

On appeal, Garcia argues that the District Court 1) abused its discretion in denying his motion to withdraw his guilty plea; 2) improperly imposed sentencing enhancements for possessing a dangerous weapon and for his role in the offense; and 3) erred in finding that his criminal conduct involved in excess of 1.5 kilograms of crack cocaine. Rosario, who has filed briefs both through counsel and pro se, raises a number of arguments, including: 1) ineffective assistance of trial counsel; 2) insufficient evidence to support his conviction; and 3) error in sentencing him as a "career offender."

Where, as in Garcia's case, a defendant moves to withdraw a guilty plea after the court has accepted it but before sentencing, the court may allow the withdrawal "if there are valid grounds for withdrawal and if granting the motion would be fair and just, giving due regard to any prejudice the government might suffer as a result." *United States v. Couto*, 311 F.3d 179, 185 (2d Cir.2002). The defendant bears the burden of showing that valid grounds exist for relief. *Id.; United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997). We review the District Court's denial of Garcia's motion to withdraw his plea for abuse of discretion. *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir.2001) (per curiam).

A defendant's motion to withdraw a guilty plea on grounds that it was involuntary or unknowing due to ineffective assistance of counsel is governed by the *Strickland* framework for ineffective assistance. *Hernandez*, 242 F.3d at 112. Accordingly, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Garcia contends that he received ineffective assistance because his attorney advised him that pleading guilty to the cocaine base count would not make a difference at sentencing. As Garcia explains, "underpinning Mr. Garcia's allegation that

he was misled into pleading guilty by his attorney's advice, is his claim that he did not know he was charged with distributing cocaine base/crack cocaine." Garcia's plea proceeding, however, was replete with mentions that the crime involved distributing "cocaine base" or "crack cocaine." For example, when specifically asked by the trial court whether he would "admit to being involved with over 50 grams of crack cocaine," Garcia replied, "Yes. Yes, sir." The District Court "was entitled to rely upon the defendant's sworn statements, made in open court ..., that he understood the consequences of his plea." *Hernandez*, 242 F.3d at 112. "A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997).

■ Garcia also claims ineffective assistance because of his counsel's supposed failure to show him the government's discovery materials explaining the acquisition of drugs from a cooperating witness. The District Court rejected this argument because Garcia could not show prejudice. We agree. The Supreme Court has held that, in the context of challenging a guilty plea, *Strickland's* prejudice prong requires a defendant to show that "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). This inquiry "will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id.* The Court gave as an example,

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced"

the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. *This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.*

*Id.* (emphasis added). The Court advised in *Hill* that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Id.* at 59–60, 106 S.Ct. 366 (quoting *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052). Assessing Garcia's allegation objectively, we find no reason to suspect that the discovery materials at issue would have altered the outcome of a trial. Preliminarily, we note that the materials did not exculpate Garcia. At best, they provided additional ammunition for impeaching a prosecution witness whose credibility was already subject to attack on a variety of grounds. The likelihood that the materials at issue "would have changed the outcome of a trial," *id.* at 59, 106 S.Ct. 366, is belied by the conviction of co-defendant Rosario, which was obtained at a trial in which defense counsel used the discovery materials to challenge the prosecution case. Of course, since Garcia's counsel had the discovery materials before his client pleaded guilty, there is no question in this case of counsel "chang[ing] his recommendation as to the plea." *Id.* Under these circumstances, Garcia cannot demonstrate the requisite prejudice simply by claiming that he would not have pleaded guilty but for counsel's alleged deficient performance.

Garcia's second argument for withdrawing his guilty plea is that the government violated *Brady*, 373 U.S. at 87, 83 S.Ct. 1194, by providing late disclosure of the

manner in which the drugs were discovered. We affirm the District Court's conclusion that the government disclosed the evidence to the satisfaction of *Brady*.

The District Court applied a two-level enhancement because Garcia possessed a firearm during the commission of the drug conspiracy. *See* U.S.S.G. § 2D1.1(b)(1). Garcia argues that this enhancement was improper because it was based on Martinez's testimony who, according to Garcia, "is a devious and manipulative witness not worthy of belief." The District Court had witnessed Martinez testify while presiding over Rosario's trial and was well-equipped to assess his believability. *See United States v. Duverge Perez*, 295 F.3d 249, 255 (2d Cir.2002) (granting sentencing court broad discretion in deciding to believe a particular witness and reviewing assessments of witness credibility for clear error). We therefore find no error, much less clear error, in the District Court's decision to credit Martinez's testimony.

Garcia also contends that his firearm possession had no relationship to the underlying narcotics activity. When determining whether to apply an enhancement for firearm possession, the sentencing court must take into account all relevant conduct. *United States v. Aponte*, 235 F.3d 802, 804 (2d Cir.2000) (per curiam). Relevant conduct includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). "[O]nce the government has established that a weapon's presence was reasonably foreseeable to the defendant during conduct ... relevant to the offense ... at issue, the enhancement will apply unless the defendant demonstrates that it is clearly improbable that the weapon was connected with the drug offense." *United States v. Smith*, 215 F.3d 237, 241 (2d Cir.2000) (per curiam)

(citations omitted). The District Court found the two-level enhancement warranted by the fact "that [Garcia] possessed a .9 millimeter weapon during the time when he was distributing narcotics in the Oneonta/Masonville area and, therefore, the two-point enhancement is properly scored." These factual findings were not clearly erroneous because they were supported by the evidence from Rosario's trial. *See Aponte*, 235 F.3d at 804. Moreover, precisely because guns are tools of the narcotics trade, *see United States v. Becerra*, 97 F.3d 669, 671 (2d Cir.1996); *United States v. Vegas*, 27 F.3d 773, 778 (2d Cir.1994) (and cases cited therein), it was hardly "clearly improbable" that Garcia's possession of a firearm was unrelated to his extensive drug trafficking activities. The totality of the circumstances plainly justified the enhancement.

Garcia also objects to the District Court's four-level increase for his aggravating role in the crime. Under Guideline § 3B1.1(a), "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." The District Court found Garcia to be "a leader or organizer" because he recruited others, directed people to go to New York to obtain drugs, and "was principally responsible for coordinating" the drug trafficking activities. These findings were well supported by the evidence from Rosario's trial and were not clearly erroneous. *See United States v. Manas*, 272 F.3d 159, 163 (2d Cir.2001).

Garcia's final objection is to the District Court's determination that he was responsible for in excess of 1.5 kilograms of crack cocaine, thus yielding a base offense level of 36. The District Court's calculation was based largely on Martinez's testimony, which Garcia maintains is "not worthy of belief." In determining the drug quantity

for base offense level, a sentencing court may make credibility determinations, which will not be disturbed unless clearly erroneous. *United States v. McLean,* 287 F.3d 127, 133 (2d Cir.2002). As noted above, the District Court was able to assess Martinez's credibility at Rosario's trial and did not clearly err in crediting Martinez's testimony. *See Duverge Perez,* 295 F.3d at 255. Garcia also contends that because "much of the cocaine in this case has the same appearance as crack cocaine," the District Court erred in calculating the drug quantity. In cases, such as the one before us, where the full amount of drugs was not seized, the court may "estimate the amount of drugs involved in a crime for sentencing purposes" and this "estimation need be established only by a preponderance of the evidence." *McLean,* 287 F.3d at 133 (citation and quotation marks omitted). The District Court's factual finding as to the narcotics quantity was supported by the testimony at Rosario's trial and was not clearly erroneous. *See United States v. Prince,* 110 F.3d 921, 924 (2d Cir.1997).

Rosario's first claim is that he received ineffective assistance at trial. As discussed earlier, to establish constitutionally deficient representation, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," and "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 688, 694, 104 S.Ct. 2052. Our analysis grants much deference to counsel's performance because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689, 104 S.Ct. 2052. Upon reviewing the record from Rosario's trial, we find no deficiencies in his trial counsel's performance.

The focal point of Rosario's sufficiency argument is that the government's evidence lacked credibility. Asserting that "the credibility of the witnesses who testified against him at trial on a scale of 1 to 10 is zero," Rosario argues that we should find that the jury could not have acted as a rational trier of fact. This argument fails because "we defer to the jury's determinations of the weight of the evidence and the credibility of witnesses." *United States v. Anglin,* 169 F.3d 154, 159 (2d Cir.1999).

Rosario also challenges the overall sufficiency of the government's evidence, contending that the case against him was "a very weak one." Rosario, of course, faces a heavy burden in challenging the sufficiency of the trial evidence, as we view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Anglin,* 169 F.3d at 159; *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence at trial clearly established the existence of a conspiracy to distribute narcotics. Once the prosecution has proved a conspiracy, the "evidence sufficient to link another defendant with it need not be overwhelming and it may be circumstantial in nature." *United States v. Desena,* 260 F.3d 150, 154 (2d Cir.2001) (quotations omitted). Deference to the jury is particularly important here "because a conspiracy by its very nature is a secretive operation, and it is a rare case 'where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'" *United States v. Pitre,* 960 F.2d 1112, 1121 (2d Cir.1992) (quoting *United States v. Provenzano,* 615 F.2d 37, 45 (2d Cir.1980)). The government sufficiently linked Rosario to the conspiracy through several witnesses who tes-

tified to purchases and distributions of drugs by Rosario.

 Rosario's final objection is to the District Court's assignment of "career offender" status at sentencing. Section 4B1.1 of the Guidelines provides, as relevant here, that a defendant is considered a "career offender" if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a)(3). Rosario argues that his two earlier convictions for attempted robbery in the second degree do not qualify for a "career offender" classification under § 4B1.1. Under the § 4B1.2(a), a "crime of violence" includes "any offense under federal or state law, punishable by imprisonment for a term exceeding one year that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a); *see United States v. Brown,* 52 F.3d 415, 425 (2d Cir.1995). The District Court correctly concluded that Rosario's New York convictions satisfied this standard. *See Brown,* 52 F.3d at 425.

Rosario also contends that his prior convictions were "related" because they had been consolidated for sentencing under the theory that he had been sentenced for both on the same day. "Prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 application note 3. It is well settled, however, that cases are not considered consolidated for sentencing merely because the sentences had been imposed on the same day. *United States v. Gelzer,* 50 F.3d 1133, 1143 (2d Cir.1995). We therefore conclude that the District Court did not err in finding that Rosario's prior convictions were not factually related.

We have reviewed all of the defendants-appellants' arguments and affirm the judgments of the District Court.